IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JORGE BRINGUIER, et. al., | |
| Plaintiffs, | CIVIL NO.: 09-2140 (ADC) |
| v. | |
| AVCO CORP., et. al. | |
| Defendants. | |
| ZULAIKA RODRÍGUEZ-DELGADO, et. al., | |
| Plaintiffs, | CIVIL NO.: 10-1211 (ADC) |
| v. | |
| AERO INVESTMENT CORP., et. al., | |
| Defendants. | |

**OPINION AND ORDER**

**I.  PROCEDURAL POSTURE**

On August 18, 2011, plaintiffs filed a motion requesting an order to compel defendant Aero Investment Corporation ("Aero") to surrender the plane's motor and some of its parts ("the wreckage") so that plaintiffs could send it to a laboratory in Colorado for inspection. (D.E. No. 93). On October 21, 2011, the court ordered plaintiffs and Aero to file informative motions clarifying three points pertaining to this discovery dispute (D.E. No. 129), which they did on October 27, 2011 and October 28, 2011, respectively. (D.E. Nos. 141, 143). Subsequently, plaintiffs filed a second motion to compel, requesting the same relief as their prior motion (D.E. 146), to which all defendants filed responses in opposition. (D.E. Nos. 147, 148). Pending before the court are

plaintiffs' two motions to compel. (D.E. Nos. 93, 146). For the reasons set forth below, the motions are denied.

## II. LEGAL ANALYSIS

Federal Rule of Civil Procedure ("Rule") 37 allows a party who has requested items under Rule 34(a) to move for an order compelling discovery when the opposing party fails to produce those items. Rule 34(a) allows a party to serve a discovery request on any other party "to produce and permit the requesting party . . . to inspect . . . items *in the responding party's possession, custody, or control*." Fed. R. Civ. P. 34(a)(1) (emphasis added). While plaintiffs have repeatedly asserted that the wreckage is under Aero's possession and control (D.E. Nos. 93, p. 2; 106-1, p. 4; 141, p. 1), Aero denies this (D.E. Nos. 99, p. 7; 99-4, p. 1; 143, p. 2), and plaintiffs have provided no evidence to the contrary. Aero informed the court that the wreckage is in the possession, custody, and control of a claims supervisor at Chartis Insurance Company ("Chartis") under a policy held by Atis Corporation ("Atis"), the owner of the aircraft. (D.E. Nos. 99, p. 7; 143, p. 2).[1] The court cannot compel Aero to produce items over which it has no possession, custody, or control, as Rule 34 does not allow plaintiffs to request such discovery from them. See Fed. R. Civ. P. 34(a)(1).

An item is considered to be under a party's "control," and thus subject to production under Rules 34 and 37, if that party "has the right, authority, or ability to obtain [it] upon demand." Colon v. Blades, 268 F.R.D. 129, 132 (D.P.R. 2010) (citing Greene v. Fulton, 157 F.R.D. 136, 142 (D. Me. 1994)). Plaintiffs have not shown that Aero has such a right, authority or ability with respect to the wreckage. Plaintiffs' own complaint states that Atis Corporation ("Atis") was the "owner/operator"

---

[1] Plaintiffs moved to voluntarily dismissed their claims against Atis and Chartis (a.k.a. American International Insurance Company of Puerto Rico), and the court subsequently dismissed said claims with prejudice on January 10, 2011, after plaintiffs. (D.E. Nos. 58, 59.)

2

of the aircraft. (D.E. No. 6-4, ¶ 4, in Case No. 10-1211 (ADC)). Further, according an email exchange between the parties in April 2011, counsel for defendant Aero informed plaintiffs' counsel that "control over the wreckage lies with Atis Corp. and the people at Chartis who handle the claims against Atis under their insurance policy. Aero investment, my client in this case, has never owned the wreckage and does not control it." (D.E. No. 99-4) (see also D.E. No. 106-1 (plaintiffs acknowledge that counsel for Aero told them that control of the wreckage lays with Atis and Atis's claims supervisors at Chartis, and provide no argument or evidence to the contrary)).[2] Aero states that they are also insured by Chartis, but under a separate policy. (D.E. No. 99, p. 7). None of the parties' submissions to the court suggest that Aero has the right, authority, or ability to obtain from its insurer items belonging to another client of that insurance company. Nor is there evidence of any linkage between Aero and Atis which would allow the former to demand the wreckage from the latter. Therefore, Rule 34 does not permit the discovery request which plaintiffs seek to enforce against Aero through their motions to compel, nor can the court compel discovery from a nonparty via this procedural device. See Fed. R. Civ. P. 45 (governing production of evidence from nonparties).

Furthermore, plaintiffs' undue delay in attempting to coordinate the desired laboratory inspection warrants denial of the motions to compel. A brief chronology of these events makes this point clear. At issue in this case is an airplane crash that occurred on February 8, 2009. (D.E. No. 2.) Plaintiffs filed their complaint in November of the same year, alleging that engine failure caused

---

[2] Additionally, in support of their motion to compel, plaintiffs submitted a copy of a letter from plaintiff Jorge Bringuier to Ted Lawton, the insurance adjuster at Chartis whom Bringuier states is in control of the wreckage. (D.E. 106-2.) In that letter, Bringuier writes that the owner of the airplane wreckage is "your client," Atis Corporation. (D.E. 106-2, p. 2.) Although this letter supports Aero's assertion that the wreckage is in the hands of Atis's representatives at Chartis, the same was submitted in Spanish with no certified English translation and thus cannot be considered part of the record pursuant to Local Rule 5(g).

the airplane to crash due to the respective defendants' negligence in designing, manufacturing, and maintaining said engine. (D.E. No. 2).

On April 13, 2011, the parties met pursuant to Federal Rule of Civil Procedure 26(f), where they drew up a proposed discovery timetable. (D.E. No. 79). The agreed upon schedule indicated that a joint preliminary inspection of the aircraft and its engine would take place between May 23 and June 3, 2011, and that any party who wished to conduct an additional inspection would do so on or before August 3, 2011. (D.E. No. 79, p. 3). Subsequently, the court entered a case management order setting January 31, 2012 as the deadline for completion of all discovery. (D.E. No. 80).

On May 31, 2011, the preliminary inspection took place, at which time plaintiffs expressed their need to send the wreckage to a laboratory for further testing. (D.E. No. 93). However, according to the parties' submissions, plaintiffs' next communication regarding the laboratory testing did not occur until July 19, 2011, fifteen days prior to the agreed upon deadline for further inspections. (D.E. Nos. 100-5; D.E. 106-3, p. 2; 106-1, p. 4).[3] That same day, defendants responded requesting proposed testing dates and expressing the need to agree on protocols for the transport and testing of the wreckage prior to making the arrangements. (D.E. No. 100-6). Defendants added that reaching such an agreement would take time, and suggested holding an immediate telephone conference to agree on extending certain discovery deadlines to "give us enough time to undertake discovery properly without any prejudicial delay to anybody." (D.E. No. 100-7). Plaintiffs promptly responded that they agreed (D.E. No. 100-8); however, there is no evidence in the record to suggest

---

[3] Plaintiffs seem to imply that their first communication to this effect occurred on June 2, 2011, but the email that they cite from plaintiffs' counsel merely says: "[w]ith regards to the laboratory analysis of the aircraft parts, it is our understanding that we will also be informed as to which laboratory will handle the analysis, and which parts will be analyzed." (D.E. 106-1, p. 4; 106-3, p.1.) This statement merely implies that there will be an analysis, but evidences no effort on plaintiffs' part to make it happen in a timely manner.

that such a conference ever took place. Instead, the next communication between the parties that is reflected in the record is a letter from defendants' counsel dated August 3, 2011, the agreed upon deadline for further inspection of the wreckage. (D.E. No. 100-9). It stated that defendants had not received any suggestions from plaintiffs as to the shipping and testing protocols, and emphasizes that defendants wished to depose their experts after receiving plaintiffs' expert reports and would thus need to reschedule those depositions if the inspection would prevent plaintiffs from submitting their expert reports by the agreed upon deadline of September 3, 2011. (D.E. 100-9; D.E. 79, p. 3-4). The letter also contains a list of questions for plaintiffs to address in order to draft the protocol, for example: who will be responsible for crating the wreckage for shipping, how will the crating be accomplished, what company or individual will perform the shipping from Puerto Rico to Colorado, and who will receive the shipping crates in Colorado. (D.E. No. 100-9, p. 1-2).

The next day, plaintiffs sent an e-mail responding defendants' letter, protesting that defendants were not cooperating with their efforts to conduct the inspection and were instead "raising further obstacles and restrictions." (D.E. No. 100-10). They also complained that defendants had listed "9 items" "that must be covered, supposedly by us" for inclusion in the protocol. (D.E. No. 100-10). Four days later, plaintiffs sent another email noting that defendants had sent them "a detailed 'protocol'" which was "very cumbersome," but that they were "trying to see how [to] comply in order to have the wreckage examined again." (D.E. No. 12). They added that "[i]f it cannot be examined, it is not because of any fault of ours, but because of the difficulties invoked by defendants in this respect." (D.E. No. 12).

Plaintiffs' response to defendants' request for a protocol and for the information that it would entail is difficult to fathom. Sending an airplane engine and other pieces of aircraft wreckage

5

overseas is not an ordinary shipping endeavor, especially when that aircraft is the subject of litigation, raising concerns about preserving its evidentiary integrity. Therefore, it is unsurprising that defendants would insist upon an agreement as how the wreckage would be packaged and shipped, not to mention who would bear the expense of this inevitably costly process. It is also reasonable that defendants would ask plaintiffs to provide–or at least suggest–the details for this procedure, as it was plaintiffs who requested the inspection. There is no evidence that plaintiffs provided any of the requested information at that time nor that they attempted to meet and negotiate with defendants. Instead, on August 18, 2011, plaintiffs filed their first motion to compel, assuring the court that "[a]lthough cumbersome, the information requested will be provided." (D.E. No. 93, p. 3).[4]

The record, however, does not reflect any attempt by plaintiffs to provide the requested information to defendants until *after* this court's order of October 21, 2011, ordering the parties to clarify whether plaintiffs had ever submitted the requested protocol. (D.E. No. 129). In response to that order, plaintiffs asserted that they had indeed sent a proposed protocol to defendants. (D.E. No. 141). However, defendants stated that plaintiffs sent them said protocol on October 27, 2011, a fact that plaintiffs do not dispute. (D.E. No. 143-2 (showing copy of e-mail from plaintiffs to defendants transmitting protocol, dated October 27, 2011)). Moreover, defendants state that they objected to a section of the protocol providing that one of the plaintiffs, Jorge Bringuier, would

---

[4] The foregoing e-mail exchange, and plaintiffs' apparent failure to meet and negotiate with defendants or to propose a protocol raise doubt as to plaintiffs' compliance with the prerequisite that the moving party certify to the court that is has "in good faith conferred or attempted to confer with the person or party failing to make the disclosure" prior to filing a motion to compel. Fed. R. Civ. P. 37(a)(1); see Aponte-Navedo v. Nalco Chemical Co., 268 F.R.D. 31, 40-41 (D.P.R. 2010) (quoting Ross v. Citifinancial, Inc., 203 F.R.D. 239, 240 (S.D. Miss. 2001)) ("'The meet and confer prerequisite is not an empty formality' and 'cannot be satisfied by including with the motion copies of correspondence that discuss the discovery issue itself.'"); see also Local Rule 26(b) (requiring a certification that the moving party has "made a reasonable and good-faith effort to reach an agreement with opposing counsel on the matters set forth in the motion. An attempt to confer will not suffice.").

prepare the shipping crate and help pack the wreckage in it. (D.E. No. 147, p. 4). Plaintiffs acknowledge defendants' complaint, stating that Bringuier "has no objection that a separate independent company do it." (D.E. No. 146, p. 2). However, plaintiffs have not shown that they have made any effort to designate an independent company and to update the proposed protocol to cure this dispute and allow the parties to agree on a final protocol.

Therefore, despite plaintiffs' expressed urgency to proceed with the desired inspection, the record shows that they have not made a serious effort to negotiate a protocol with defendants in an expedient fashion, especially in light of the discovery cut off date set by the court for January 31, 2012. Moreover, there is no evidence in the record that plaintiffs have attempted to contact Atis or Chartis, whom defendants repeatedly asserted are the parties in control of the airplane wreckage. Furthermore, and finally, in its order of October 21, 2011, this court ordered plaintiffs to state how much time it would take them to transport the wreckage to Colorado, perform the proposed laboratory tests, and produce their expert report based on the results. (D.E. No. 129). In response, plaintiffs stated that "[t]he laboratory in Colorado is ready to proceed . . . but it cannot give us a definite, specific, time frame for that, which will depend on various factors." (D.E. No. 141, p. 2). Because plaintiffs did not provide even a range of dates or an approximation of the required time line, the court cannot be assured that the inspection would be complete in time for the parties' expert reports to be produced and for expert witness depositions to take place prior to the discovery cut off of January 31, 2011. The court cannot order an inspection that will likely delay the discovery process, and it cannot cure plaintiffs' lack of diligence in coordinating a timely inspection by ordering Aero to produce items from a third party.

**III. CONCLUSION**

In view of plaintiffs' (1) insistence on requesting an order to compel Aero to release items not in its possession, custody, or control, (2) lack of diligence in compliance with the parties agreed upon discovery plan, and (3) lack of compliance with this court's order to provide a time frame for the proposed inspection, plaintiffs' two Motions to Compel defendant Aero to produce the wreckage for inspection (D.E. Nos. 93, 146) are hereby DENIED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 20th day of December, 2011.

s/Marcos E. López<br>U.S. Magistrate Judge